UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TERESA AGUIRRE,

          Plaintiff,

    v.

THE STATE OF CALIFORNIA, et al.,

          Defendants.

Case No. 16-cv-05564-HSG

**ORDER DENYING MOTIONS FOR RENEWED JUDGMENT AS A MATTER OF LAW, TO AMEND OR ALTER THE JUDGMENT, AND FOR A NEW TRIAL; GRANTING MOTION TO DENY COSTS**

Re: Dkt. No. 237, 239

Plaintiff Teresa Aguirre brought suit under the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* ("FMLA"), and the California Family Rights Act, California Government Code § 12945.2 ("CFRA"), claiming that her employer, Defendant State of California, and two of her supervisors, Defendants Debra Mills and Carianne Huss, interfered with her right to leave under those statutes. *See* Compl., Dkt. No. 1. Aguirre proceeded to trial and the jury found for Defendants. *See* Final Judgment, Dkt. No. 231. Following the verdict, Aguirre moved for renewed judgment as a matter of law, a new trial, and to amend the judgment. *See* Dkt. No. 237 ("Mot."). After costs were taxed against Aguirre, Dkt. No. 238, she moved to deny costs to Defendants. *See* Dkt. No. 239. For the following reasons, the Court **DENIES** all three post-trial motions and **GRANTS** the motion to deny costs.[1]

## I. BACKGROUND

Before turning to Aguirre's motions, the Court begins with a short summary of the facts introduced at trial and a brief overview of the law related to FMLA interference. The Court notes

---

[1] The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b).

1    that the facts of this case posed an apparently unprecedented issue regarding the interaction

2    between Aguirre's FMLA leave and the location of her job while on leave.  The case thus

3    implicated a tension between the FMLA's requirements and clear precedent establishing that an

4    employee is not entitled to "any rights, benefits, or positions they would not have been entitled to

5    had they not taken leave."  *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1132 (9th Cir. 2003) (citing

6    29 U.S.C. § 2614(a)(3)(B)).

7    **A.    Factual Background**

8    Since receiving a promotion in September 2015, Aguirre worked as an Employment

9    Development Specialist I at the California Employment Development Department ("EDD") in

10   Marysville.  *See* Trial Tr. vol. 2 at 291, 303 (Mills' testimony); Trial Tr. vol. 3 at 444–45 (Aguirre

11   testifying about her promotion and duties).  Aguirre lived in Kelseyville, which was about 100

12   miles (a two-hour drive) from her workplace in Marysville but only about seven miles from her

13   pre-promotion job site in Lakeport.  *See* Trial Tr. vol. 3 at 436, 443, 445 (Aguirre's testimony).

14   When Aguirre's father became ill in March 2016, Aguirre requested part-time FMLA leave so that

15   she could care for him in the mornings but continue working during the afternoons.  *See id.* at

16   462–64 (Aguirre explaining her FMLA request); Trial Ex. 4 (email from Aguirre).  In addition,

17   Aguirre asked for an accommodation to work out of the Lakeport office, which was located about

18   two minutes away from her father's house.  *See* Trial Tr. vol. 3 at 453, 462–65; Trial Ex. 4.

19   The EDD approved Aguirre's FMLA leave and temporarily accommodated her request to

20   work from Lakeport in the afternoons, which allowed her to be closer to her father and spend less

21   time commuting.  *See* Trial Exs. 5, 6, 11, 15, 16 (emails).  After eight weeks of working half-days

22   from Lakeport, Aguirre emailed Mills to say that it "doesn't look like I will be able to return to the

23   Marysville office soon."  *See* Trial Ex. 17.  A few days later, on May 10, 2016, Mills told Aguirre

24   that she could no longer be accommodated in Lakeport and that she must return to her regular job

25   site in Marysville beginning on May 16.  *See id.* (email from Mills to Aguirre recapping May 10

26   conversation); *see also* Trial Ex. 18 (email from Mills to Aguirre explaining that the "FMLA is a

27   separate issue than your work location").  Aguirre did not return to Marysville but instead took

28   FMLA leave based on her own condition, ultimately not coming back to work for nearly 18

2

1    months.  *See* Trial Tr. vol 3. at 486–87, 493–94 (Aguirre's testimony); Trial Exs. 19, 21 (noting

2    Aguirre's taking of leave).

3         **B.    The FMLA**

4         "The FMLA provides job security and leave entitlements for employees who need to take

5    absences . . . to care for family members with serious illnesses."  *Xin Liu*, 347 F.3d at 1132.

6    Specifically, it provides employees with "two interrelated, substantive employee rights": the right

7    to "use a certain amount of leave for protected reasons," and the "right to return to his or her job or

8    an equivalent job after using protected leave."  *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112,

9    1122 (9th Cir. 2001).

10        It is unlawful under the FMLA "for any employer to interfere with, restrain, or deny the

11   exercise of or the attempt to exercise any right" provided for in the statute.  29 U.S.C.

12   § 2615(a)(1).  "Any violations of the [FMLA] or [the implementing] regulations constitute

13   interfering with, restraining, or denying the exercise of rights provided by the Act."  29 C.F.R.

14   § 825.220(b).  Such interference includes refusing to authorize FMLA leave, discouraging the use

15   of such leave, and "changing the essential functions of the job in order to preclude the taking of

16   leave."  *Id.*  To establish a prima facie case of FMLA interference, a plaintiff must establish

17                  that (1) he was eligible for the FMLA's protections, (2) his employer
                    was covered by the FMLA, (3) he was entitled to leave under the
18                  FMLA, (4) he provided sufficient notice of his intent to take leave,
                    and (5) his employer denied him FMLA benefits to which he was
19                  entitled.

20   *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1243 (9th Cir. 2014) (quoting *Sanders v.*

21   *City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011)) (internal quotation marks omitted).  "In

22   interference claims, the employer's intent is irrelevant to a determination of liability."  *Sanders*,

23   657 F.3d at 778.  However, "[t]he FMLA does not entitle the employee to any rights, benefits, or

24   positions they would not have been entitled to had they not taken leave."  *Xin Liu*, 347 F.3d at

25   1132 (citing 29 U.S.C. § 2614(a)(3)(B)).

26        An employee seeking FMLA leave "need not expressly assert rights under the FMLA or

27   even mention the FMLA."  29 C.F.R. § 825.302(c).  Rather, "[i]t is the employer's responsibility

28   to determine when FMLA leave is appropriate, to inquire as to specific facts to make that

3

1    determination, and to inform the employee of his or her entitlements." *Xin Liu*, 347 F.3d at 1134;

2    *see also* 29 C.F.R. § 825.302(c).  This framing of the employer's responsibility, however,

3    "strongly suggests that there are circumstances in which an employee might seek time off but not

4    intend to exercise his or her rights under the FMLA." *Escriba*, 743 F.3d at 1244 (emphasis

5    added).  In such cases, "[t]he employer could find itself open to liability for forcing FMLA leave

6    on the unwilling employee." *Id.*

7    ### C.    The Trial and Post-Trial Motions

8    A four-day jury trial was held beginning on January 7, 2019.  *See* Dkt. Nos. 211, 212, 213,

9    219 (minute entries).  Following about a day of deliberations, the jury returned a verdict for

10   Defendants.  *See* Dkt. No. 220 (minute entry).  Specifically, the jury found that none of the

11   Defendants had interfered with, restrained, or denied Aguirre's exercise of or attempt to exercise

12   her FMLA or CFRA rights.  *See* Verdict Form, Dkt. No. 216.

13   The Court entered judgment on February 12, 2019.  *See* Dkt. No. 231.  Aguirre filed her

14   post-trial motions on March 12.  *See* Mot.  Defendants opposed, *see* Dkt. No. 240 ("Opp."), and

15   Aguirre replied, *see* Dkt. No 241 ("Reply").

16   ## II.   RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

17   ### A.    Legal Standard

18   "[A] party must make a Rule 50(a) motion for judgment as a matter of law before a case is

19   submitted to the jury." *EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009).  "If

20   the judge denies or defers ruling on the motion, and if the jury then returns a verdict against the

21   moving party, the party may renew its motion under Rule 50(b)." *Id.*  A renewed motion for

22   judgment as a matter of law under Rule 50(b) may be granted only "if the evidence, construed in

23   the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that

24   conclusion is contrary to the jury's verdict." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1066

25   (9th Cir. 2016) (quoting *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)).  The court does "not

26   make credibility determinations or weigh the evidence," but "must view the evidence in the light

27   most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."

28   *Go Daddy*, 581 F.3d at 961 (internal quotations and alterations omitted).  "A jury's verdict must

1    be upheld if it is supported by substantial evidence that is adequate to support the jury's findings,

2    even if contrary findings are also possible." *Escriba*, 743 F.3d at 1242.

3          **B.    Discussion**

4          Aguirre contends that Defendants interfered with her FMLA and CFRA rights in four

5    distinct ways, which she says entitle her to judgment as a matter of law. *See* Mot. at 7. The Court

6    will discuss each argument in turn.

7          **i.    Marysville Start Time**

8          First, Aguirre posits that requiring her to begin work at 12:30 p.m. in Marysville interfered

9    with her protected leave because it made her unable to care for her father in Lakeport until 11:30

10   a.m. or noon, given the roughly two-hour commute. *See* Mot. at 11. According to Aguirre,

11   Defendants ordered her to report to Marysville at 12:30 p.m., despite knowing that it would

12   interfere with her ability to use her approved caretaking leave. *Id.* at 8.

13         Aguirre has argued throughout the proceedings that the imposition of this schedule

14   constituted "per se" interference. *See* Dkt. No. 155 at 2 n.2; *see also* Dkt. No. 59 at 9 (arguing that

15   Defendants "interfered with the length of [Aguirre's] leave" by requiring her to report to

16   Marysville). Once again, the Court rejects Aguirre's argument that imposing this schedule was a

17   per se violation of the FMLA. *See* Dkt. No. 155 at 2. The jury was tasked with resolving the

18   parties' factual dispute as to the terms of Aguirre's leave and whether Defendants interfered with

19   or discouraged her exercise of that leave. *See id.* Aguirre told the jury that she "considered"

20   taking full-time leave but decided against it because she "love[d] going to work" and it helped

21   keep her "life balanced." *See* Trial Tr. vol. 3 at 473:4–14. She wrote in an email on May 9 that

22   she "can work from 12–5; Monday thru Friday." *See* Trial Ex. 18. And Aguirre testified that after

23   she was told to report to Marysville, she did not seek to adjust her leave schedule. *See* Trial Tr.

24   vol. 4 at 652:14–21. Thus, the jury could have reasonably concluded that Defendants fashioned a

25   schedule around what Aguirre herself stated as her availability. *See, e.g.*, Trial Ex. 18 (email from

26   Mills to Aguirre: "You can work any hours etc we just need a schedule from you – Remember tho,

27   the FMLA is a separate issue than your work location.").

28         The Court concludes that the jury's verdict was supported by substantial evidence and that

5

1    a reasonable jury could have found that requiring Aguirre to report to Marysville at 12:30 p.m. did

2    not interfere with or discourage her use of FMLA leave.

3                    **ii.    Travel Time**

4            Second, Aguirre contends that the time she spent traveling between caring for her father in

5    Lakeport and working in Marysville was subject to the FMLA's protection.  *See* Mot. at 16.

6    According to Aguirre, the term "caring for" in the FMLA includes "the travel time between the

7    work site and the care site."  *Id.* at 17–18.

8            Despite litigating this case for over three years, Aguirre did not mention this legal theory

9    until well into the trial.  It was not articulated in the complaint, raised in the partial motion for

10   summary judgment or motion for reconsideration, or proposed in any of the pre-trial jury

11   instructions.  *See* Dkt. Nos. 1 (Compl.), 59 (motion for partial summary judgment), 90 (motion for

12   reconsideration), 114 (January 2018 joint proposed jury instructions), 166 (July 2018 joint

13   proposed jury instructions).  Rather, the first time Aguirre argued that travel time is within the

14   FMLA's ambit was in a proposed jury instruction (which the Court declined to give) filed at the

15   end of the trial the night before the charging conference.  *See* Dkt. No. 207 (proposed instruction

16   10P); Trial Tr. vol. 4 at 933–35 (discussion of proposed instruction 10P).

17           Even if Aguirre had alerted Defendants and the Court to this legal theory earlier in the

18   proceedings, the evidence introduced at trial does not support judgment as a matter of law on this

19   ground.  The regulations implementing the FMLA specify that the "provision that an employee is

20   needed to care for a family member . . . encompasses both physical and psychological care."  29

21   C.F.R. § 825.124(a).[2]  Care for purposes of the FMLA includes when the "family member is

22   unable to care for his or her own basic medical, hygienic, or nutritional needs or safety, or is

23   unable to transport himself or herself to the doctor" or when the employee is "providing

24   psychological comfort and reassurance."  *Id.*  The Ninth Circuit has explained that the term

25   "caring for" requires "some level of participation in ongoing treatment of that condition."

26   *Marchisheck v. San Mateo Cty.*, 199 F.3d 1068, 1076 (9th Cir. 1999).  For example, a son who

27

28   [2] This rule became effective on March 8, 2013, but the prior version of the regulation (29 C.F.R. § 825.116) was nearly identical for present purposes and thus earlier cases are still instructive.

6

1    moved to his father's town to psychologically support him and help with daily tasks raised a

2    genuine issue of material fact about whether he was caring for him.  *See Scamihorn v. Gen. Truck*

3    *Drivers*, 282 F.3d 1078, 1088 (9th Cir. 2002); *see also Siegel v. Edmark Auto Inc.*, No. 1:09-CV-

4    00443-CWD, 2011 WL 3439937, at *9 (D. Idaho Aug. 8, 2011) (holding that daughter who

5    "traveled to Florida to move her father precisely so she could transport him to Boise to receive

6    treatment and manage his care" was caring for him as a matter of law).  By contrast, a husband

7    who took a cross-country trip to retrieve a family car and called his wife during the drive to

8    provide "moral support and comfort" did not, as a matter of law, care for her.  *See Tellis v. Alaska*

9    *Airlines, Inc.*, 414 F.3d 1045, 1048 (9th Cir. 2005).

10         The Court concludes that, based on the evidence introduced at trial, Aguirre did not show

11   that she would have been caring for her father while in her car commuting between Lakeport and

12   Marysville.  Aguirre never requested additional leave or sought to adjust her work schedule to

13   cover the time she would have spent commuting.  Rather, she requested three to four hours of

14   leave per day.  *See* Tr. Ex. 2.  And Aguirre received what she asked for: four hours of leave per

15   day.  Moreover, Aguirre never actually commuted to Marysville: when the EDD could no longer

16   accommodate her, she requested, and was granted, FMLA leave based on her own condition rather

17   than returning to her regular job site in Marysville.  *See* Trial Tr. vol 3. at 486–87, 493–94

18   (Aguirre's testimony); Trial Exs. 19, 21 (noting Aguirre's taking of leave).  Aguirre did not

19   introduce any evidence that she would have cared for her father during her drive to Marysville had

20   she returned to her normal work site.  Accordingly, Aguirre has not shown that she is entitled to

21   judgment as a matter of law on this theory of interference or discouragement.

22         **iii.    Notice of Eligibility**

23         Third, and closely related to her second argument, Aguirre posits that Defendants had an

24   affirmative obligation to inform her of her entitlement to FMLA leave for her travel time.  *See*

25   Mot. at 20.  The FMLA regulations provide that an "employer should inquire further of the

26   employee if it is necessary to have more information about whether FMLA leave is being sought

27   by the employee, and obtain the necessary details of the leave to be taken."  29 C.F.R. §

28   825.302(c).  But, as discussed above, Aguirre did not show that her travel time was FMLA-

7

1    qualifying leave.  Thus, Defendants were not required to inform her that she could use FMLA

2    leave for the time she spent commuting and this theory does not support judgment as a matter of

3    law.

4                    **iv.    Alternate Caregivers**

5           Fourth, Aguirre contends that the evidence that Defendants inquired into potential alternate

6    caregivers compels the conclusion that Defendants interfered with her FMLA leave, contrary to

7    the jury's verdict.  Of course, an employee who uses FMLA leave to care for a family member

8    "need not be the only individual or family member available to care for the family member." 29

9    C.F.R. § 825.124.  Aguirre points to the fact that Huss mentioned the possibility of arranging care

10   through Visiting Angels, a nurse aide program, and Mills asked whether someone else in

11   Aguirre's family might be able to care for her father.  *See* Trial Tr. vol. 2 at 309:6–10, 317:16–

12   318:14.  According to Aguirre, the only reasonable conclusion is that Defendants were attempting

13   to discourage her from exercising her FMLA leave.

14          But Mills provided a different explanation for the inquiries: she "was [Aguirre's] friend."

15   *See* Trial Tr. vol. 2 at 303:24–304:4; *see also* Trial Tr. vol. 4 at 769:18–20 (Neitzel: "Ms. Mills

16   knew Ms. Aguirre very well and knew of her situation and so was able to provide suggestions

17   around that, which is usually very normal.").  Moreover, Aguirre told the jury about her twin goals

18   of caring for her father and continuing to work at least part-time.  *See* Trial Tr. vol. 3 at 473:4–14

19   (Aguirre: "I love going to work. . . . [I]t just balanced me perfectly, just being at work, being able

20   to get away for a few minutes, for a few hours, and then being able to go back and take care of my

21   father.").  By asking their longtime co-worker and friend whether anyone else could care for her

22   father, Defendants may have been attempting to help Aguirre achieve the balance she wanted.

23   Viewing the evidence in the light most favorable to Defendants, the jury reasonably could have

24   concluded that Defendants' inquiries into alternate caregivers did not interfere with or discourage

25   Aguirre's use of her FMLA leave.  Therefore, judgment as a matter of law is not warranted on this

26   basis.

27                              *        *        *

28          The Court concludes that the jury's verdict was supported by substantial evidence, which

8

1   was adequate to support its findings, and thus **DENIES** the renewed motion for judgment as a

2   matter of law.

3   **III.    MOTION TO AMEND OR ALTER JUDGMENT**

4       Aguirre moves to amend or alter the judgment under Rule 59(e) based on what she views

5   as the Court's legal errors for limiting the argument, theories, evidence, and jury instructions. *See*

6   Mot. at 27.

7       "There are four grounds upon which a Rule 59(e) motion may be granted: 1) the motion is

8   necessary to correct manifest errors of law or fact upon which the judgment is based; 2) the

9   moving party presents newly discovered or previously unavailable evidence; 3) the motion is

10  necessary to prevent manifest injustice; or 4) there is an intervening change in controlling law."

11  *Turner v. Burlington N. Santa Fe R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003) (internal quotations

12  and emphasis omitted).  However, "amending a judgment after its entry remains an extraordinary

13  remedy which should be used sparingly." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th

14  Cir. 2011) (internal quotation omitted).

15      Aguirre suggests that amendment of the summary judgment orders is necessary to correct

16  the Court's manifest errors of law. *See* Mot. at 27.  But Aguirre does not point to any changed or

17  new law to support her contention that the Court committed manifest errors of law in its summary

18  judgment or reconsideration orders, or in its formulation of the jury instructions. *See id.* at 27–33.

19  The most she does is argue that relief is warranted because the Court declined to give her proposed

20  jury instruction that the time spent traveling to work is time spent "caring for" a family member

21  under the FMLA. *See id.* at 33; *see also* Dkt. No. 207 at 2 (proposed instruction).  As discussed

22  above, the Court finds that this proposed instruction does not accurately describe the current state

23  of the law.  Moreover, Aguirre did not propose this instruction in either of her joint pre-trial

24  submissions, instead waiting until the night before the charging conference to introduce this

25  theory. *See* Dkt. No. 207.  Finally, Aguirre did not introduce any evidence at trial to demonstrate

26  that she would have been caring for her father had she commuted from her home to Marysville.

27      The Court concludes that it did not commit any manifest error of law and therefore

28

9

1  **DENIES** the motion for amendment or alteration of the judgment under Rule 59(e).[3]

2  ## IV.     MOTION FOR NEW TRIAL

3      Aguirre contends that a new trial is required because the jury "made a mistake in finding

4  no interference" as "the clear weight of the evidence relevant to the FMLA/CFRA issues of

5  interference . . . tilts well in favor of Plaintiff." Mot. at 34.  The Court disagrees.

6  ### A.     Legal Standard

7      A court "may, on motion, grant a new trial on all or some of the issues," Fed. R. Civ. P.

8  59(a), "if the verdict is contrary to the clear weight of the evidence, is based upon false or

9  perjurious evidence, or to prevent a miscarriage of justice," *Molski v. M.J. Cable, Inc.*, 481 F.3d

10  724, 729 (9th Cir. 2007) (internal quotations omitted).  Courts should not grant a new trial unless

11  they are "left with the definite and firm conviction that a mistake has been committed." *Landes*

12  *Constr. Co. v. Royal Bank of Can.*, 833 F.2d 1365, 1372 (9th Cir. 1987) (internal quotations

13  omitted).  In considering a Rule 59(a) motion, the court "is not required to view the trial evidence

14  in the light most favorable to the verdict" but instead may "weigh the evidence and assess the

15  credibility of the witnesses." *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d

16  829, 842 (9th Cir. 2014).

17  ### B.     Discussion

18      Aguirre argues that the jury's verdict must be overturned because the clear weight of the

19  evidence established that requiring her to report to Marysville at 12:30 p.m. interfered with her

20  FMLA leave and that Defendants "exerted pressure" on her to find other options to care for her

21  father. *See* Mot. at 34–37.  Upon weighing the evidence and assessing the credibility of the

22  witnesses, the Court is not left a definite and firm conviction that the jury committed a mistake by

23  entering a verdict for Defendants.  The Court finds that the jury came to a reasonable conclusion

24  that Defendants did not interfere with Aguirre's leave by scheduling her to work at 12:30 p.m. in

25  Marysville (which is where her job was located) after she requested three to four hours of leave

26

27  _____

28  [3] Aguirre also moved to amend the judgment based on defense counsel's alleged misconduct.  The Court finds no basis for granting this relief on this basis either.  The Court will address the motion for sanctions, and any appropriate relief, in a separate order.

United States District Court
Northern District of California

1  per day. Likewise, the Court finds it reasonable that the jury would conclude that Defendants'

2  inquiries into alternate caregivers were not harassment but rather normal questions one would ask

3  a friend and co-worker, which were quickly halted once Aguirre made clear they were unwelcome.

4  The Court concludes that the verdict was not contrary to the clear weight of the evidence

5  and that the jury's reasonable verdict should not be disturbed, and thus **DENIES** the motion for a

6  new trial.

7  **V.      MOTION TO RETAX COSTS**

8  After costs in the amount of $22,886.88 were awarded against Aguirre, Dkt. No. 238, she

9  moved to retax costs. Defendants opposed, Dkt. No. 242, and Aguirre replied, Dkt. No. 243.

10  Under Federal Rule of Civil Procedure 54(d), costs "should be allowed to the prevailing

11  party" unless a "federal statute," the Federal Rules of Civil Procedure, or a court order provides

12  otherwise. This "rule creates a presumption in favor of awarding costs to a prevailing party, but

13  vests in the district court discretion to refuse to award costs." *Ass'n of Mexican-Am. Educators v.*

14  *State of California*, 231 F.3d 572, 591 (9th Cir. 2000) (en banc). In *Escriba*, the Ninth Circuit

15  affirmed the district court's denial of costs to a prevailing defendant. *See* 743 F.3d at 1249. The

16  Ninth Circuit highlighted five, non-exhaustive reasons why costs may appropriately be denied:

17  "(1) the substantial public importance of the case, (2) the closeness and difficulty of the issues in

18  the case, (3) the chilling effect on future similar actions, (4) the plaintiff's limited financial

19  resources, and (5) the economic disparity between the parties." *Id.* at 1247–48. Likewise, under

20  the CFRA, an unsuccessful "plaintiff should not be ordered to pay the defendant's fees or costs

21  unless the plaintiff brought or continued litigating the action without an objective basis for

22  believing it had potential merit." *Williams v. Chino Valley Indep. Fire Dist.*, 61 Cal. 4th 97, 99–

23  100 (2015).

24  The Court finds that costs should be denied to Defendants. First, this case presented novel,

25  close, and difficult legal questions about the interpretation of the FMLA, as to which there is little

26  case law in the Ninth Circuit. Second, taxing costs could have a chilling effect on the willingness

27  of individual employees to sue their employers for perceived violations of their rights. *See*

28  *Escriba*, 743 F.3d at 149 (noting in FMLA case that "even modest costs can discourage potential

United States District Court
Northern District of California

plaintiffs who . . . earn low wages").  Third and fourth, Aguirre has established her limited

financial resources and the vast economic disparity between her resources and those of the State of

California.  Accordingly, the Court **GRANTS** Aguirre's motion and declines to tax costs against

her.

## VI.  CONCLUSION

For the foregoing reasons, the Court **DENIES** Aguirre's motions for renewed judgment as

a matter of law, to alter or amend the judgment, and for a new trial.  However, the Court

**GRANTS** the motion to deny costs to Defendants.  The judgment entered on February 12, 2019

remains in full effect.

**IT IS SO ORDERED.**

Dated:  8/2/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge